## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

DR. MICHAEL SAAG, individually and
behalf of all others similarly situated,

        Plaintiff,

    v.

AGA SERVICE COMPANY D/B/A
ALLIANZ GLOBAL ASSISTANCE, and
JEFFERSON INSURANCE COMPANY,

        Defendants.

Civil Action No.:  1:20-cv-06704-CM

## MEMORANDUM IN SUPPORT OF DEFENDANTS'
## <u>MOTION TO DISMISS AND TO STRIKE</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 1

   I.   FACTUAL ALLEGATIONS OF THE COMPLAINT ............................................. 1

   II.   POLICY LANGUAGE .............................................................................................. 3

LEGAL STANDARD ....................................................................................................... 4

ARGUMENT ..................................................................................................................... 5

   I.  COUNT II OF THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT AND ALL OF PLAINTIFF'S CLAIMS FAIL AS A RESULT ..................... 5

      A.  Interpretation of Policy Language and Application of the Epidemic Exclusion are Matters of Law .............................................................................................. 5

      B.  There is No Coverage for Plaintiff's Claim Under the Plain Language of the Epidemic Exclusion .................................................................................................. 7

   II.  PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER SECTION 349 (COUNT I) FOR SEVERAL ADDITIONAL REASONS ............................................. 10

      A.  The Insurance Transaction and Act at Issue Did Not Occur in New York .................. 11

      B.  Plaintiff Has Not Sufficiently Alleged a "Consumer Oriented" Act or Practice ........... 13

      C.  The Relief Plaintiff Seeks in Count I is Duplicative of Plaintiff's Contract Claim ....... 14

      D.  Nationwide Class Action Relief is Not Available in Section 349 Cases ....................... 14

   III.  THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT III) ....... 16

   IV.  PLAINTIFF'S DECLARATORY JUDGMENT CLAIM SHOULD BE DISMISSED AS DUPLICATIVE ..................................................................................................... 18

   V.  THE COURT LACKS PERSONAL JURISDICTION OVER AGA .............................. 19

      A.  There is No Basis for Jurisdiction over AGA in New York .......................................... 19

B.   The Court Also Lacks Jurisdiction Over the Claims of Non-Resident Putative
     Class Members ............................................................................................................ 20

**CONCLUSION** ............................................................................................................... **22**

**CERTIFICATION OF COMPLIANCE**................................................................................. **23**

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Accessories Biz, Inc. v. Linda & Jay Keane, Inc.*,
    533 F.Supp.2d 381 (S.D.N.Y.2008)..........................................................................................6

*Alexander & Alexander Svcs., Inc. v. These Certain Underwriters at Lloyd's, London*,
    136 F.3d 82 (2d Cir. 1998)...........................................................................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................................................4

*Bartlett v. Nationwide Mut. Fire Ins. Co.*,
    No. 12-CV-435-A, 2013 WL 623497 (W.D.N.Y. Feb. 19, 2013)....................................11, 13

*Bonner v. Safeco Ins. Co. of Am.*,
    No. CV 1:19-00213-JB-N, 2020 WL 4047971 (S.D. Ala. Jan. 29, 2020)..............................18

*Bristol-Myers Squibb Co. v. Superior Ct. of CA, San Francisco Cty.*,
    137 S. Ct. 1773 (2017).................................................................................................19, 20, 21

*Broadway v. State Farm Mut. Auto. Ins. Co.*,
    364 F. Supp. 3d 1329 (M.D. Ala. 2019) ...............................................................................18

*Carpenter v. PetSmart, Inc.*,
    No. 19-CV-1731-CAB-LL, 2020 WL 996947 (S.D. Cal. Mar. 2, 2020) ...............................21

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
    433 F.3d 181 (2d Cir. 2005)......................................................................................................12

*Chen v. Dunkin' Brands, Inc.*,
    954 F.3d 492 (2d Cir. 2020)................................................................................................5, 19

*Chizniak v. CertainTeed Corp.*,
    No. 1:17-CV-1075-FJSATB, 2020 WL 495129 (N.D.N.Y. Jan. 30, 2020) ...........................21

*Coney Island Auto Parts Unlimited, Inc. v. Charter Oak Fire Ins. Co.*,
    619 F. App'x 28 (2d Cir. 2015)...............................................................................................6, 8

*David Lerner Assocs. v. Philadelphia Indem. Ins. Co.*,
    934 F. Supp. 2d 533 (E.D.N.Y. 2013) ....................................................................................7

*Deutsch v. JPMorgan Chase & Co.*,
    No. 18-CV-11655 (VSB), 2019 WL 4805689 (S.D.N.Y. Sept. 30, 2019) ............................18

*Deutsche Bank Sec. Inc. v. Rhodes*,
    578 F.Supp.2d 652 (S.D.N.Y. 2008)........................................................................................16

*Diesel Barbershop, LLC v. State Farm Lloyds*,
     No. 5:20-CV-461-DAE, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020) ..............................10

*Drizin v. Sprint Corp.*,
     12 A.D.3d 245, 785 N.Y.S.2d 428 (1st Dep't App. Div. 2004) ...............................................14

*Fleisher v. Phoenix Life Ins. Co.*,
     858 F. Supp. 2d 290 (S.D.N.Y. 2012)..............................................................................14, 16

*Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*,
     No. 20-CV-04434 JSC, 2020 WL 5642483 (N.D. Cal. Sept. 22, 2020)..................................10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
     564 U.S. 915 (2011).............................................................................................................19

*Goshen v. Mut. Life Ins. Co. of New York*,
     98 N.Y.2d 314, 774 N.E.2d 1190 (N.Y. 2002) ...........................................................11, 14, 16

*Handy & Harman v. Am. Intern. Group, Inc.*,
     No. 0115666/2007, 2008 WL 3999964 (N.Y. Sup. Ct. Aug. 25, 2008) .................................16

*ICD Holdings S.A. v. Frankel*,
     976 F.Supp. 234 (S.D.N.Y. 1997)........................................................................................17

*In re Cedar Hill Cemetery Litig.*,
     853 F.Supp. 706 (S.D.N.Y 1994)...........................................................................................4

*Jane St. Holding, LLC v. Aspen Am. Ins. Co.*,
     No. 13 CIV. 2291 RWS, 2014 WL 28600 (S.D.N.Y. Jan. 2, 2014), *aff'd*, 581 F. App'x 49 (2d
     Cir. 2014) ............................................................................................................................17

*Kaufman v. Sirius XM Radio, Inc.*,
     474 F. App'x 5 (2d Cir. 2012) ..............................................................................................12

*Kraatz v. USAA Cas. Ins. Co.*,
     No. 16-CV-00103-FPG, 2017 WL 876187 (W.D.N.Y. Mar. 6, 2017)....................................13

*Lambert v. Coregis Ins. Co., Inc.*,
     950 So. 2d 1156 (Ala. 2006)...................................................................................................6

*Lifelock, Inc. v. Certain Underwriters at Lloyd's*,
     146 A.D.3d 565 (1st Dep't App. Div. 2017) ...........................................................................7

*Luke's Catering Serv., LLC v. Cuomo*,
     No. 20-CV-1086S, 2020 WL 5425008 (W.D.N.Y. Sept. 10, 2020).........................................8

*McCarthy v. Dun & Bradstreet Corp.*,
     482 F.3d 184 (2d Cir. 2007).....................................................................................................4

*Morrissey v. Nextel Partners, Inc.*,
    72 A.D.3d 209, 895 N.Y.S.2d 580 (3d Dep't App. Div. 2010) ..............................14

*New York Univ. v. Cont'l Ins. Co.*,
    87 N.Y.2d 308 (1995) .......................................................................................16

*Perfect Dental, PLLC v. Allstate Ins. Co.*,
    2006 WL 2552171 (E.D.N.Y. 2002)..................................................................11

*Seifert d/b/a The Hair Place & Harmar Barbers, Inc. v. IMT Ins. Co.*,
    No. CV 20-1102, 2020 WL 6120002 (D. Minn. Oct. 16, 2020)............................10

*Smith v. Nations Recovery Ctr, Inc.*
    No. 119CV1229MADDJS, 2020 WL 3479496 (N.D.N.Y. June 25, 2020) .............8

*Spagnola v. Chubb Corp.*,
    574 F.3d 64 (2d Cir. 2009).................................................................................14

*Spratley v. FCA US, LLC*,
    No. 3:17-CV-0062-MAD, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017) ............21

*SPV Osus Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018)..................................................................................5

*Svensson v. Securian Life Insc. Co.*,
    706 F. Supp. 2d 521 (S.D.N.Y. 2010)...................................................................7

*Turek Enterprises, Inc. v. State Farm Mut. Auto. Ins. Co.*,
    No. 20-11655, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020)............................10

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
    916 F.3d 143 (2d Cir 2019)................................................................................19

*Woodall v. Alfa Mut. Ins. Co.*,
    658 So. 2d 369 (Ala. 1995).................................................................................6

*Zawahir v. Berkshire Life Ins. Co.*,
    22 A.D.3d 841 (2d Dep't App. Div. 2005) ..........................................................13

## STATUTES

New York General Business Law § 349................................................................ *passim*

## OTHER AUTHORITIES

Bulletin of the World Health Organization (July 2011, Vol. 89, No. 7),
    https://www.who.int/bulletin/volumes/89/7/11-088815/en/ ......................................8

Fed. R. Evid. 201 .................................................................................................2

Fed. R. Civ. P. 12(b) ................................................................................ *passim*

Fed. R. Civ. P.  23(d)(1)(D) ...........................................................................1

Last JM, ed., A Dictionary of Epidemiology,
    4th edition. New York: Oxford University Press (2001)); ........................................8

"Lesson 1: Introduction to Epidemiology", CDC.gov
    https://www.cdc.gov/csels/dsepd/ss1978/lesson1/section11.html ...........................9

Merriam-Webster.com, (Jun. 11, 2020)
    https://www.merriam-webster.com/dictionary/pandemic#learn-more .....................9

Porta M., ed., A Dictionary of Epidemiology
    6th ed. New York: Oxford University Press (2018) ..................................9

U.S. Coverage Alert – 2019 Novel Coronavirus/COVID-19, https://www.
    allianztravelinsurance.com/coverage-alerts/2019-novel-coronavirus.htm ..............7

"WHO Director-General's Opening Remarks at the Media Briefing on COVID-19" (March 11,
    2020), https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-
    the-media-briefing-on-covid-19---11-march-2020 .................................2

www.who.int/emergencies/diseases/en (archive.org screenshot accessed May 12, 2020)............2

Defendants AGA Service Company d/b/a Allianz Global Assistance ("AGA") and Jefferson Insurance Company ("Jefferson") (collectively, "Defendants") submit this memorandum in support of their motion to dismiss Plaintiff Michael Saag's amended complaint (Dkt. 5) (hereinafter "Complaint") for failure to state a claim and lack of personal jurisdiction pursuant to FRCP 12(b)(6) and 12(b)(2), and to strike the class action allegations and proposed class definition pursuant to FRCP 12(f) and 23(d)(1)(D).

## INTRODUCTION

Plaintiff brings this insurance coverage action, both as an individual and as a purported representative of a nationwide class of individuals, against Defendants for the denial of travel insurance claims. Plaintiff alleges that, as a result of the ongoing global pandemic arising out of the spread of the coronavirus disease ("COVID-19") and because he himself contracted COVID-19, Plaintiff cancelled a trip he had planned from Birmingham, Alabama to Johannesburg, South Africa in April 2020. Plaintiff subsequently submitted a claim for coverage under his Jefferson travel insurance policy. Under that policy, however, there is no coverage for any loss that results directly or indirectly from an epidemic. Plaintiff's claim was for precisely such a loss. Plaintiff, therefore, has failed to state a claim upon which relief can be granted. Plaintiff's related and dependent causes of action arising under New York General Business Law § 349, the implied covenant of good faith and fair dealing, and seeking declaratory relief also fail—for this reason and others—as well.

## BACKGROUND

## I.     FACTUAL ALLEGATIONS OF THE COMPLAINT

Plaintiff resides in Birmingham, Alabama. Compl. ¶ 7. In January 2020, Plaintiff and his wife purchased a travel insurance policy from Jefferson, Policy No. US07540387 (the "Policy"). Compl. ¶ 10. A copy of the Policy was attached to Plaintiff's Amended Complaint and is also

attached hereto as **Exhibit A**.  Plaintiff and his wife allege they cancelled their trip following a series of governmental orders regarding COVID-19, including an Alabama "stay-at-home" order issued on April 3, 2020.  *See* Compl. ¶¶ 16-19.

The orders that Plaintiff asserts caused him to cancel his travel plans were issued as a direct reaction to the spread of COVID-19.  In fact, the orders referenced in the Complaint occurred within a few days of COVID-19 being declared a "pandemic" by the World Health Organization.  *See,* "WHO Director-General's Opening Remarks at the Media Briefing on COVID-19" (March 11, 2020), https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020, ("We have therefore made the assessment that COVID-19 can be characterized as a pandemic."), attached hereto as **Exhibit B**;[1] Compl. at Ex. B (Alabama stay-at-home order entered because COVID-19 is a "disease of epidemic potential" that "poses the potential of widespread exposure").

In addition to the various governmental orders, Plaintiff also alleges that he cancelled his travel plans because he himself contracted COVID-19.  Compl. ¶ 15.  After cancelling his travel plans, Plaintiff submitted a claim for coverage under the Policy.  Compl. ¶ 21.  Plaintiff's claim was denied based on the plain language of the Policies' Epidemic Exclusion, as well as other policy provisions.  Compl. ¶ 22; Compl. at Ex. D (referring to epidemic exclusion as well as exclusion for losses related to travel alerts/bulletins and governmental prohibitions).  Plaintiff, without elaboration, alleges this denial was "without reasonable cause or excuse and fails to consider the policy as a whole[.]"  Compl. ¶ 25.

---

[1]     The WHO recognized that pandemics were merely wide-spread epidemics; and included COVID-19 on its list of "Pandemic, epidemic diseases" as early as January 24, 2020.  *See* www.who.int/emergencies/diseases/en (archive.org screenshot accessed May 12, 2020), attached hereto as **Exhibit C**.  The Court may take judicial notice of the WHO's statements and declarations regarding COVI-19 under Fed. R. Evid. 201.

Plaintiff seeks to represent a "nationwide class" of individuals who are alleged to have purchased travel insurance, cancelled travel as a result of the ongoing COVID-19 epidemic, and had their insurance claims denied.  Compl. ¶ 26.  Plaintiff does not seek to limit the class definition to only individuals who, like him, actually contracted COVID-19; rather, he seeks a class of all insureds "whose policy coverage was denied by Defendants based on the policy's epidemic exclusion and/or due to Coronavirus/COVID-19[.]"  Plaintiff alleges, "on information and belief," that Defendants have "refused to perform [their] obligations to . . . each member of the class[.]"  Compl. ¶ 30.

Plaintiff's Complaint contains four counts which are subject to this motion: violation of New York Business Law § 349 (Count I); breach of contract (Count II); breach of the implied covenant of good faith and fair dealing (Count III); and declaratory judgment (Count IV).

## II.    POLICY LANGUAGE

The Policy provides for the payment of certain amounts as Trip Cancellation Coverage in the event an insured's trip is "canceled or rescheduled for a *covered reason*."[2]  Policy at 7.  A *covered reason* is a "specifically named situation[] or event[] for which [the insured is] covered under this *policy*."   Policy at 4.   The Policies include a list of enumerated *covered reasons*, including: the death or illness of an insured; the bankruptcy or financial failure of a tour operator, airline, or cruise line; or, a traffic accident occurring on the day of the trip.  Policy at 7-8.  For Plaintiff's trip, the maximum cancellation benefit is $13,000.  Policy at Declaration of Coverage; Compl. ¶ 12.

---

[2]    Words in italics in the Policy are defined terms set forth in the Policy's Definitions section.

Coverage under the Policy is limited, however, by a number of specified exclusions which are "applicable to all coverages[.]"  Policy at 17.  The Epidemic Exclusion on which this motion is based provides:

> "This *policy* does not provide coverage for any loss that results directly or indirectly from any of the following general exclusions if they affect *you*, a *traveling companion*, or a *family member*: . . .
>
> 14.    An *epidemic*[.]"

Policy at 17.

*Epidemic* is defined in the Policy as a "contagious disease that spreads rapidly and widely among the population in an area and which is recognized as an epidemic by the World Health Organization (WHO) or Centers for Disease Control and Prevention (CDC)."  Policy at 4.

## LEGAL STANDARD

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint where the complaint fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).  The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case.  *See*, *e.g.*, *In re Cedar Hill Cemetery Litig.*, 853 F.Supp. 706, 709 (S.D.N.Y 1994).  A complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When considering a motion to dismiss, a court must accept as true the well-pleaded allegations of the complaint, and view them in the light most favorable to the non-movant.  *See*, *e.g.*, *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 189 (2d Cir. 2007).  A court, however, is not required to accept a plaintiff's mere conclusory statements. or "threadbare recitals of the elements for a cause of action." *Iqbal*, 556 U.S. at 678.

To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a plaintiff must make a *prima facie* showing of jurisdiction. *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492 (2d Cir. 2020). Once a defendant has challenged a federal court's jurisdiction, the burden remains on the plaintiff to prove jurisdiction exists. *See SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342–43 (2d Cir. 2018) ("A plaintiff 'must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant.'") (internal citation omitted).

## ARGUMENT

## I.  COUNT II OF THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT AND ALL OF PLAINTIFF'S CLAIMS FAIL AS A RESULT

### A.  Interpretation of Policy Language and Application of the Epidemic Exclusion are Matters of Law

Plaintiff asserts in conclusory fashion that his claims "arise solely under New York law." Compl. ¶ 5. He further alleges that the "conduct giving rise to Plaintiff's claims and to the claims of each putative class member occurred in New York." *Id.* It is unclear why Plaintiff makes these assertions given that his claim involves the purchase of a travel insurance policy by an individual residing in Alabama, Compl. ¶ 7, from Defendants who are based in Virginia, Compl. ¶¶ 8-9, that involved travel from Birmingham, Alabama to Johannesburg, South Africa, Compl. ¶ 10. It seems more likely that Alabama law would apply to this transaction.[3] Whether New York or Alabama

---

[3] The choice of law issues presented by Plaintiff's claim demonstrate why Plaintiff's proposed class definition is overly broad and class certification would prove particularly unwieldy. The claims of a "nationwide class" will implicate the laws of all fifty states, as well as require the Court to undertake an analysis of the scope, timing, and restrictions put in place by countless state, county, and local stay-at-home orders, which differ in each state and locality. *See* Compl. ¶ 20 ("Around this time, almost every other state in the nation issued a stay at home order[.]").

law applies here does not affect the outcome, however; Plaintiff has failed to state a claim for breach of contract under either state's law.

In New York, the "initial interpretation of a contract is a matter of law for the court to decide." *Alexander & Alexander Svcs., Inc. v. These Certain Underwriters at Lloyd's, London*, 136 F.3d 82, 86 (2d Cir. 1998) (citation omitted). Ordinary rules of contract interpretation apply to insurance policies. *See Accessories Biz, Inc. v. Linda & Jay Keane, Inc.,* 533 F.Supp.2d 381, 386 (S.D.N.Y.2008). An insurance contract is thus interpreted "to give effect to the intent of the parties as expressed in the clear language of the contract." *Coney Island Auto Parts Unlimited, Inc. v. Charter Oak Fire Ins. Co.*, 619 F. App'x 28, 29–30 (2d Cir. 2015).

Likewise, under Alabama law, "general rules of contract law govern an insurance contract" and "the court must enforce the insurance policy as written if the terms are unambiguous." *Lambert v. Coregis Ins. Co., Inc.*, 950 So. 2d 1156, 1161 (Ala. 2006) (internal citations omitted). Further, "insurance companies are entitled to have their policy contracts enforced as written . . . the fact that different parties contend for difference constructions does not mean that the disputed language is ambiguous." *Woodall v. Alfa Mut. Ins. Co.*, 658 So. 2d 369, 371 (Ala. 1995) (internal quotation omitted).

Here, Plaintiff alleges that Defendants breached the Policy by failing to pay benefits where a "trip was canceled or rescheduled for a covered reason." Compl. ¶ 45. According to Plaintiff, Defendants' denial of any claim that arose out of COVID-19 was improper. Plaintiff's argument, however, ignores the language of the Policy's Epidemic Exclusion under which coverage for Plaintiff's claim is barred.

Plaintiff's Complaint references a March 16, 2020 statement on AGA's website regarding Defendants' response to COVID-19. Compl. ¶ 23. As that statement made clear, "COVID-19

became a known event on January 22, 2020 and was recognized as an epidemic as of February 3, 2020." *See* U.S. Coverage Alert – 2019 Novel Coronavirus/COVID-19, https://www. allianztravelinsurance.com/coverage-alerts/2019-novel-coronavirus.htm.   The March 16th statement further noted, "[c]laims due to . . . epidemics . . . are generally not covered[.]" *Id.* The website stated that "although not covered under most plans," accommodations would be extended to insureds who actually became ill with COVID-19. *Id.* The website statement is not alleged to be, and is not in fact, a part of the parties' insurance contract. The March 16th website statement was also unrelated to Plaintiff's purchase of travel insurance. This accommodation language, again, is not alleged to have appeared on AGA's website until two months after Plaintiff purchased his insurance.[4]

### B.   There is No Coverage for Plaintiff's Claim Under the Plain Language of the Epidemic Exclusion

When unambiguous language in an insurance contract – including exclusions therein – establishes that no coverage is owed, a plaintiff's claim fails as a matter of law and must be dismissed. *See Svensson v. Securian Life Insc. Co.*, 706 F. Supp. 2d 521, 536 (S.D.N.Y. 2010) (finding policy exclusion was not ambiguous and granting insurer's motion to dismiss); *David Lerner Assocs. v. Philadelphia Indem. Ins. Co.*, 934 F. Supp. 2d 533, 541 (E.D.N.Y. 2013) (granting motion to dismiss, finding that application of policy exclusion barred coverage); *Lifelock, Inc. v. Certain Underwriters at Lloyd's*, 146 A.D.3d 565 (1st Dep't App. Div. 2017) (motion to dismiss granted where plaintiff's request for coverage fell entirely within policy

---

[4]   Upon receipt of Plaintiff's Complaint, Defendants realized that Plaintiff had actually contracted COVID-19, but had not been granted the website accommodation, and thereafter tendered Plaintiff a check in the amount of the benefits sought under the Policy.

exclusion); *see also Coney Island,* 619 F. App'x at 29-30 (affirming grant of summary judgment in insurer's favor where policy exclusion was clear and unambiguous).

Here, the Epidemic Exclusion is plain and unambiguous: the Policy does not provide "coverage for any loss that results directly or indirectly from . . . [a]n epidemic."  Policy at 17. COVID-19 was and is plainly an epidemic.  An epidemic is: "[a] contagious disease that spreads rapidly and widely among the population in an area and which is recognized as an epidemic by the World Health Organization (WHO) or Centers for Disease Control and Prevention (CDC)."  Policy at 4.  This is a classic description of COVID-19.  The WHO included COVID-19 on its list of epidemic diseases as early as January 24, 2020 and declared the disease a global pandemic (a wide-spread epidemic) a month before Plaintiff's trip.

Courts within the Second Circuit have likewise recognized that COVID-19 is indeed an epidemic that has had an impact on all aspects of everyday life since early this year.  *See, e.g, Smith v. Nations Recovery Ctr, Inc.* No. 119CV1229MADDJS, 2020 WL 3479496, at *1 (N.D.N.Y. June 25, 2020) (referring to the "COVID-19 epidemic"); *Luke's Catering Serv., LLC v. Cuomo,* No. 20-CV-1086S, 2020 WL 5425008, at *1 (W.D.N.Y. Sept. 10, 2020) (describing COVID-19 as a "society-threatening epidemic").

While COVID-19 is commonly described as a pandemic, a "pandemic" is simply a type of "epidemic."  *See, e.g.,* Heath Kelly, "The classical definition of a pandemic is not elusive.", Bulletin of the World Health Organization (July 2011, Vol. 89, No. 7), available at: https://www.who.int/bulletin/volumes/89/7/11-088815/en/  ("A pandemic is defined as 'an epidemic occurring worldwide, or over a very wide area, crossing international boundaries and usually affecting a large number of people.'" (quoting Last JM, ed., A Dictionary of Epidemiology, 4th edition.  New York: Oxford University Press (2001)); "Lesson 1: Introduction to

Epidemiology", CDC.gov, https://www.cdc.gov/csels/dsepd/ss1978/lesson1/section11.html ("*Pandemic refers to an epidemic* that has spread over several countries or continents, usually affecting a large number of people.") (emphasis added); *see also* "Pandemic", Merriam-Webster.com, https://www.merriam-webster.com/dictionary/pandemic#learn-more (Jun. 11, 2020) (explaining in the "Frequently Asked Questions" that a "pandemic is a kind of epidemic: one which has spread across a wider geographic range[.]"); Porta M., ed., A Dictionary of Epidemiology, 6th ed. New York: Oxford University Press (2018) (defining pandemic as "an epidemic occurring over a very wide area, crossing international boundaries, and usually affecting a large number of people").

There is no dispute that Plaintiff's cancellation of his trip to South Africa in April 2020 was a direct result of the ongoing COVID-19 pandemic. Whether Plaintiff's ultimate decision to cancel his trip was caused by his own bout of COVID-19 or as a result of the various governmental orders issued as part of a global effort to help stop the spread of COVID-19, the cancellation undoubtedly arose "directly or indirectly" from the COVID-19 epidemic. Accordingly, the plain language of the Policy's Epidemic Exclusion applies and as a matter of law no coverage is owed under the Policy.[5] Because no coverage exists, Plaintiff has failed to state a breach of contract claim and that count must be dismissed. All of Plaintiff's remaining counts turn on the existence of coverage under the Policy and a breach of contract; therefore, the Complaint must be dismissed in its entirety.

---

[5] In addition to the Epidemic Exclusion, there is no coverage under the Policy for losses resulting directly or indirectly from: 1) foreseeable events; 2) civil disorder or unrest; and 3) "[a]cts, travel alerts/bulletins, or prohibitions by any government or public authority, except as specifically covered[.]" Policy at 17-18. Defendants reserve all of their rights to press these coverage defenses later if necessary; however, for purposes of this motion Defendants ask only for dismissal based on the Epidemic Exclusion.

When faced with coverage disputes in the wake of the ongoing COVID-19 epidemic, albeit in a different coverage context, courts around the country have not hesitated to resolve such claims at the motion-to-dismiss stage based on the application of exclusions for losses arising out of a "virus."  *See, e.g., Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 WL 4724305, at *6 (W.D. Tex. Aug. 13, 2020) (granting motion to dismiss and explaining that stay-at-home orders "came about sequentially as a result of the COVID-19 virus spreading rapidly throughout the community" and therefore "the "Virus Exclusion applies and bars Plaintiffs' claims"); *Turek Enterprises, Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 20-11655, 2020 WL 5258484, at *8 (E.D. Mich. Sept. 3, 2020) (dismissing claim for coverage because Plaintiff's alleged business interruption losses "would not have occurred but for COVID-19" and therefore "the Virus Exclusion negates any coverage[.]"); *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, No. 20-CV-04434 JSC, 2020 WL 5642483, at *2 (N.D. Cal. Sept. 22, 2020) ("as the loss was caused directly or indirectly by the virus, the Virus Exclusion applies under its plain and unambiguous language")*; Seifert d/b/a The Hair Place & Harmar Barbers, Inc. v. IMT Ins. Co.,* No. CV 20-1102 (JRT/DTS), 2020 WL 6120002, at *4 (D. Minn. Oct. 16, 2020) (granting motion to dismiss in putative class action based on application of virus exclusion to claim for coverage).

 A similar approach is appropriate here.   Plaintiff's breach-of-contract claim should be dismissed based on a straightforward application of the Epidemic Exclusion.

## II.   PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER SECTION 349 (COUNT I) FOR SEVERAL ADDITIONAL REASONS

New York General Business Law § 349 provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."  N.Y. Gen. Bus. Law § 349.  In order to state a claim under Section 349, a plaintiff must establish: 1) acts or practices that are "consumer oriented;" 2) that such acts

or practices are materially deceptive or misleading; and 3) that the plaintiff has been injured by such acts. *Bartlett v. Nationwide Mut. Fire Ins. Co.*, No. 12-CV-435-A, 2013 WL 623497, at *3 (W.D.N.Y. Feb. 19, 2013). A challenged act or practice is considered "consumer oriented" only where it has "a broad impact on consumers at large; private contract disputes unique to the parties would not fall within the ambit of the statute." *Id.* (quoting *Perfect Dental, PLLC v. Allstate Ins. Co.,* 2006 WL 2552171 *2 (E.D.N.Y. 2002).

Plaintiff has failed to state a claim under Section 349 for at least three reasons. First, Plaintiff has not alleged that his transaction with Defendants occurred in New York. Second, Plaintiff has not identified an act or practice that is "consumer oriented" under Section 349. Third, Plaintiff has failed to identify any damages unique to the Section 349 claim. Moreover, cases arising under Section 349 are inappropriate for class treatment and therefore, even if Plaintiff's claim were viable, his class allegations on this claim should be stricken under FRCP 12(f).

**A.      The Insurance Transaction and Act at Issue Did Not Occur in New York**

To constitute a prohibited act under Section 349, "the deception of a consumer must occur in New York." *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 325, 774 N.E.2d 1190, 1195 (N.Y. 2002). In *Goshen*, the Court of Appeals concluded that non-New York plaintiffs who purchased an insurance policy in Florida failed to state a claim under Section 349, even though the insurer's allegedly deceptive marketing scheme had been orchestrated from New York. The court explained that to "apply the statute to out-of-state transactions in the case before us would lead to an unwarranted expansive reading of the statute, contrary to legislative intent, and potentially leading to the nationwide, if not global application of General Business Law § 349[.]" *Id.* at 1196.

Here, Plaintiff lives in Alabama. Compl. ¶ 7. While Jefferson is a New York corporation, its corporate headquarters and operations are located in Virginia. *See* Compl. ¶ 9. Likewise, AGA is a Virginia corporation whose corporate headquarters are also in Virginia. Compl. ¶ 8. Plaintiff's

Complaint alleges "acts and practices" arising out of Defendants' claim handling and reliance on the Policy's Epidemic Exclusion and alleges that Defendants "directed" such acts at "consumers throughout the country". *See* Compl. ¶¶ 37-39. Plaintiff does not identify – nor could he given the Virginia headquarters of both Defendants and his own Alabama residence – any "act or practice" that occurred in New York. Nor does Plaintiff allege that he purchased his travel insurance in New York, or that any of his interactions or transactions with Defendants occurred in New York. The signature page of the Policy indicates it was signed "for Jefferson Insurance Company" in "Richmond, Virginia." Policy at 1. Likewise, claim correspondence from AGA was sent from its corporate headquarters in Richmond, Virginia to Plaintiff's wife in Mountain Brook, Alabama. *See* Compl. at Ex. D. The Policy further includes an "Alabama State Amendment," further indicating that the transaction did not "occur" in New York. Because Plaintiff has identified no transaction or act that occurred in New York, Section 349 does not apply.

Apparently recognizing the geographic limitations of Section 349, Plaintiff asserts in conclusory fashion that: "The conduct giving rise to Plaintiff's claims and to the claims of each putative class member occurred in New York. Plaintiff's claims arise solely under New York law." Compl. ¶ 5. Such conclusory allegations are at odds with the specific facts pleaded and Plaintiff's Policy. *See Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5, 7 (2d Cir. 2012) (applying *Goshen* and holding that mere conclusory allegations regarding transactions occurring in New York amount to little more than threadbare recitals of elements of a cause of action and could not save plaintiff's complaint from dismissal). Moreover, while there may have been New Yorkers who purchased travel insurance from Jefferson, and whose claims were denied on the basis of the epidemic exclusion, those insureds are not before the Court. *See, e.g., Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,* 433 F.3d 181, 199

12

(2d Cir. 2005) (explaining that named representative's standing to sue under a statute must be determined before class certification).  Plaintiff's purchase from Alabama of insurance from Defendants based in Virginia plainly did not occur in New York.  Plaintiff's allegations are insufficient to state a claim under Section 349.

### B.      Plaintiff Has Not Sufficiently Alleged a "Consumer Oriented" Act or Practice

Plaintiff's Section 349 claim is also defective because Plaintiff fails to allege a "consumer oriented" act or practice.  A claim for deceptive business practices in violation of Section 349 cannot arise from a private contract dispute involving coverage under an insurance policy.  *Zawahir v. Berkshire Life Ins. Co.*, 22 A.D.3d 841, 842 (2d Dep't App. Div. 2005).  Consistent with this principle, "[c]ourts almost uniformly find that disputes between policy holders and insurance companies concerning the scope of coverage are nothing more than private contractual disputes that lack the consumer impact necessary to state a claim pursuant to Section 349." *Bartlett v. Nationwide Mut. Fire Ins. Co.*, No. 12-CV-435-A, 2013 WL 623497, at *4 (W.D.N.Y. Feb. 19, 2013) (granting motion to dismiss Section 349 claim); *Kraatz v. USAA Cas. Ins. Co.*, No. 16-CV-00103-FPG, 2017 WL 876187, at *9 (W.D.N.Y. Mar. 6, 2017) (granting motion to dismiss Section 349 claims where plaintiff offered only conclusory allegations regarding insurer's claim settlement practices amounting to a "potential pattern of behavior").

Here, Plaintiff alleges that Defendants breached the parties' insurance contract by denying his claim for trip cancellation benefits.  This is the very sort of private contract dispute that New York courts routinely conclude is not "consumer oriented" conduct sufficient to state a claim under Section 349.  Plaintiff's allegations that Defendants have incorrectly denied coverage based on the Epidemic Exclusion simply do not give rise to a Section 349 cause of action.  *See Bartlett,* 2013 WL 623497, at *4 ("Merely alleging use of standard policy language and a breach by an insurer

fails to satisfy the requirement of alleging a consumer-oriented practice.").  Because Plaintiff fails to identify a "consumer oriented" act or practice, his Section 349 claim must be dismissed.

### C.   The Relief Plaintiff Seeks in Count I is Duplicative of Plaintiff's Contract Claim

In order to state a claim under Section 349, a plaintiff must plead an injury that arises out of a loss that is independent from a breach of contract.  Where a policyholder's alleged "loss" under Section 349 amounts to the same damages sought for breach of an insurance contract, the policyholder has failed to state a claim.  *See Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (affirming dismissal of Section 349 claim as duplicative of breach of contract damages); *Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 305 (S.D.N.Y. 2012) (granting motion to dismiss where plaintiff failed to allege a loss unique to the Section 349 claim).

Here, Plaintiff asserts that as a result of Defendants' allegedly "deceptive acts and practices, Plaintiff Saag and putative class members have sustained injury by paying insurance premiums and failing to receive coverage."  Compl. ¶ 41.  This allegation is not sufficiently "unique" to establish injury under Section 349; rather, it relies on the exact same facts and "damages" as Plaintiff's breach-of-contract count.

### D.   Nationwide Class Action Relief is Not Available in Section 349 Cases

In the event the Court does not dismiss the Section 349 claim in its entirety, the court should at the very least strike Plaintiff's Complaint to the extent it seeks a "nationwide" class pursuant to FRCP 12(f).  New York courts routinely reject class certification of nationwide classes with respect to Section 349 claims even when the plaintiff is a New York resident entitled to the protections of the statute.  *See, e.g., Drizin v. Sprint Corp.*, 12 A.D.3d 245, 246-47, 785 N.Y.S.2d 428, 429-30 (1st Dep't App. Div. 2004); *Morrissey v. Nextel Partners, Inc.*, 72 A.D.3d 209, 216–17, 895 N.Y.S.2d 580, 587 (3d Dep't App. Div. 2010).  Both *Drizin* and *Morrisey* cited to *Goshen* in

holding that nationwide classes could not be certified because out-of-state putative class members (like Plaintiff here) would be unable to satisfy the requirement that a transaction occur in New York and further explained that certification of a nationwide class would be unwieldy. That same sound reasoning should apply here to strike the references in Plaintiff's Complaint to a nationwide class under Section 349.

Plaintiff's Section 349 count does not specify the "acts or practices" which Plaintiff alleges to be "deceptive." Rather, Plaintiff asserts in general and conclusory terms that Defendants "misrepresent[ed] that valid and covered claims under their travel insurance policies for trip cancellation would be covered" and that Defendants acted deceptively by relying on the Policy's Epidemic Exclusion. *See* Compl. ¶¶ 37-40. As set forth above, these are allegations of breach of contract that do not give rise to a cause of action under Section 349 (and fail based on the Policy's Epidemic Exclusion).

While raised in the Complaint's background allegations, it is unlikely that Plaintiff is seeking to rely on the accommodation language in Defendants' website as the basis for his Section 349 claim. Plaintiff does not specifically make such a claim and he cannot. The proposed class is made up of those who were denied coverage under travel insurance policies, not the benefit of a voluntary accommodation on a website. *See* Compl. ¶ 26 (proposing a broad class of any individual who purchased travel insurance from Defendants and who had coverage denied "based on the policy's epidemic exclusion and/or due to Coronavirus/COVID-19"). Plaintiff notably does not allege to have been misled by statements on a website and does not even allege that he was aware of such statements at the time he purchased the travel insurance at issue. Indeed, Plaintiff could not have been misled in his January 2020 purchase of insurance (Compl. ¶ 10) in reliance on website statements that did not appear until two months after his purchase—in March 2020

(Compl. ¶ 23).  *See, e.g, Goshen*, 98 N.Y.2d at 326 (Section 349 requires that any advertising or promotional conduct must result in a transaction in which a consumer was harmed within New York).  The Complaint's proposed class definition is not limited to only New York residents or individuals who transacted with Defendants in New York, and is further not limited to individuals who actually relied on statements on Defendants' website when purchasing travel insurance.

## III.   THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT III)

In Count III, Plaintiff purports to sue for breach of an implied duty of good faith and fair dealing under New York law.  As noted above, Plaintiff's assertion that New York law applies to his claims makes little sense because none of the events giving rise to his claim under the Policy or regarding the handling of his claim, are alleged to have occurred in New York.  Notwithstanding the foregoing, and assuming for purposes of this motion that New York law does apply, Plaintiff has failed to state a claim for breach of the implied duty of good faith because it is duplicative of the breach of contract claim.

"Implicit in an insurance contract, as in all contracts, is a duty of good faith and fair dealing, under which the insurer promises to investigate and pay covered claims."  *Handy & Harman v. Am. Intern. Group, Inc.*, No. 0115666/2007, 2008 WL 3999964 (N.Y. Sup. Ct. Aug. 25, 2008) (*quoting New York Univ. v. Cont'l Ins. Co.,* 87 N.Y.2d 308, 318 (1995)).  However, to avoid redundancy, "Claims of breach of the implied covenant . . . must be premised on a different set of facts from those underlying a claim for breach of contract." *Deutsche Bank Sec. Inc. v. Rhodes,* 578 F.Supp.2d 652, 664 (S.D.N.Y. 2008).  Accordingly, "[a] claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." *Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 299 (S.D.N.Y. 2012) (quoting

*ICD Holdings S.A. v. Frankel,* 976 F.Supp. 234, 243–44 (S.D.N.Y. 1997)); *see Jane St. Holding, LLC v. Aspen Am. Ins. Co.*, No. 13 CIV. 2291 RWS, 2014 WL 28600, at *10 (S.D.N.Y. Jan. 2, 2014), *aff'd*, 581 F. App'x 49 (2d Cir. 2014) ("When the alleged breach of the implied covenant of good faith and fair dealing is intrinsically tied to the damages allegedly resulting from the breach of the insurance contract, those claims are redundant." (internal quotation omitted)).

Here, Plaintiff's breach of contract claim alleges that Defendants improperly denied coverage under the Policy for Plaintiff's claim.  Plaintiff's duty of good faith and fair dealing claim relies on the same factual allegations (indeed, Plaintiff expressly incorporates them, *see* Compl. ¶ 47) and asserts that Defendants violated their duty of good faith by denying claims based on the Epidemic Exclusion.  Compl. ¶¶ 49-50.  In both counts, Plaintiff alleges that Defendants made an incorrect coverage determination under the Policy and seeks recovery of the same damages: benefits allegedly owed under the Policy.  Accordingly, Plaintiff's Count III is simply duplicative of his breach of contract claim and should be dismissed.

Although Plaintiff alleges in conclusory fashion that this count is "based on separate and distinct allegations from his breach of contract claim," Compl. ¶ 48, the two paragraphs that follow this conclusion (presumably Plaintiff's "distinct allegations"), raise the exact same issues that underlie his breach of contract count.  *See* Compl. ¶¶ 49-50.

Moreover, no bad faith can be found where an insurer's interpretation of an insurance policy is reasonable.  *Jane St. Holding*, 2014 WL 28600, at *10.  "Mere difference of opinion between an insurer and an insured over the availability of coverage does not constitute bad faith; to show bad faith the insured must demonstrate that 'no reasonable carrier would, under the given facts' deny coverage.'"  *Id.* (internal citation omitted).  Here, Defendants' reliance on the Epidemic Exclusion during the midst of the global COVID-19 epidemic was correct.  That reliance was

certainly not unreasonable and does not rise to the level of actionable bad faith. Plaintiff's Count III should be dismissed for this additional reason as well.

The result would be no different under Alabama law (where Plaintiff resides and presumably where he was when he purchased the Policy). *See, e.g., Bonner v. Safeco Ins. Co. of Am.*, No. CV 1:19-00213-JB-N, 2020 WL 4047971, at \*4 (S.D. Ala. Jan. 29, 2020) (plaintiff failed to state claim for bad faith where insurer's reasons for denial were fairly debatable); *Broadway v. State Farm Mut. Auto. Ins. Co.*, 364 F. Supp. 3d 1329, 1337 (M.D. Ala. 2019) (plaintiff must prove that denial of coverage was "without any reasonable ground for dispute").

## IV.   PLAINTIFF'S DECLARATORY JUDGMENT CLAIM SHOULD BE DISMISSED AS DUPLICATIVE

In Count IV, Plaintiff seeks declaratory relief arising out of the various coverage issues he raises in Counts I, II, and III. *See* Compl. ¶¶ 52-56. Count IV is duplicative of Plaintiff's other counts, and thus subject to dismissal for all of the same reasons. A straightforward application of the Epidemic Exclusion demonstrates Jefferson's denial of coverage was proper. Therefore, no "actual controversy" exists and Count IV should be dismissed.

Moreover, where a plaintiff has an adequate remedy at law, a declaratory judgment action is not appropriate. *See, e.g., Deutsch v. JPMorgan Chase & Co.,* No. 18-CV-11655 (VSB), 2019 WL 4805689, at \*5 (S.D.N.Y. Sept. 30, 2019) (granting motion to dismiss declaratory judgment count where plaintiff "made no showing that there is no adequate remedy at law for any of his claims"). Here, Plaintiff seeks monetary damages for Defendants' alleged breach of their obligations under the Policy. Such an award would necessarily require the Court to determine whether Defendants' denial of Plaintiff's claim on the basis of the Epidemic Exclusion was proper. In other words, there are no issues or disputes presented in Count IV that are not already

encompassed by Plaintiff's other causes of action.  Any declaratory relief, therefore, is purely duplicative and Plaintiff's Count IV should be dismissed.

## V.  THE COURT LACKS PERSONAL JURISDICTION OVER AGA

Plaintiff's Complaint should also be dismissed as to AGA because the court lacks personal jurisdiction over AGA.  This Court has neither general jurisdiction over AGA nor specific jurisdiction to hear the claims of non-residents like Plaintiff.

### A.  There is No Basis for Jurisdiction over AGA in New York

Personal jurisdiction can be general or specific.  *Bristol-Myers Squibb Co. v. Superior Ct. of CA*, *San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017).  General jurisdiction requires that a defendant be "at home" in the forum state.  *Id.*  Such is not the case with respect to AGA, a Virginia corporation with its principal place of business in Virginia.  Plaintiff alleges that AGA is registered to do business in New York and has designated an agent for service of process.  Compl. ¶ 8.  These facts are insufficient to subject AGA to general jurisdiction in the state.  *See Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492 (2d Cir. 2020) ("a foreign corporation does not consent to general personal jurisdiction in New York by merely registering to do business in the state and designating an in-state agent for service of process").  The Court does not have general jurisdiction over AGA.

Specific jurisdiction is proper only where the defendant has purposefully availed itself of the privilege of conducting activities within the forum State, the plaintiff's claim arises out of or relates to the defendant's conduct within the forum State, and the exercise of jurisdiction is reasonable under the circumstances.  *See U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir 2019); *Bristol-Myers*, 137 S. Ct. at 1781 ("there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

19

Here, beyond Plaintiff's mere conclusory allegation that AGA has "an office in New York," Compl. ¶ 5, the Complaint is utterly devoid of factual allegations that tie any of AGA's actions to New York.  Plaintiff, therefore, has not demonstrated that AGA has "availed" itself of the privilege of conducting business in New York, let alone that Plaintiff's claims arise out of any business AGA has conducted in New York.  As set forth above, the administration of a travel insurance claim for an individual in Alabama by a company based in Virginia does not implicate New York in any way.  Accordingly, the Complaint must be dismissed in its entirety as to AGA.

**B.    The Court Also Lacks Jurisdiction Over the Claims of Non-Resident Putative Class Members**

In *Bristol-Myers*, the Supreme Court struck down a decision of the California Supreme Court which found that personal jurisdiction was proper in a consolidated products liability action filed in California state court.  *Bristol-Myers*, 137 S. Ct. at 1778.  The group of plaintiffs consisted of 86 California residents and hundreds of non-residents from 33 other states.  *Id.*  The defendant was a Delaware corporation headquartered in New York, which moved to quash the service of summons as to the claims of non-California resident plaintiffs.  *Id.*  The California Supreme Court held that the state court could hear claims by non-residents against the out-of-state defendant.  The Supreme Court overturned this ruling, holding that a "connection between the forum and the specific claims at issue" was not present with respect to the non-resident plaintiffs.  *Id.* at 1781-84.  Accordingly, the exercise of specific jurisdiction over the defendant was in violation of the due-process clause of the Fourteenth Amendment.  *Id.*

While *Bristol-Myers* was limited to the exercise of specific jurisdiction by state courts, the Supreme Court left open the issue of the ruling's application in federal court.  *Id.* at 1783-84.  The reasoning of *Bristol-Myers* is sound and should be applied to dismiss any claims by non-resident putative class members in this case.  There is simply no connection between this forum and the

claims of the putative out-of-state class members.  Like the non-resident plaintiffs in *Bristol-Myers*, (and like the named Plaintiff here) any non-resident putative class member here will not have suffered any harm in the state of New York, nor will their purchase of travel insurance implicate New York or its laws.  Accordingly, the Court should find that it lacks specific jurisdiction over non-residents' claims.

Courts in New York and elsewhere have previously held that the reasoning of *Bristol-Myers* applies to nationwide class actions in federal court.  *See, e.g., Spratley v. FCA US, LLC*, No. 3:17-CV-0062-MAD, 2017 WL 4023348, at *7 (N.D.N.Y. Sept. 12, 2017); *Chizniak v. CertainTeed Corp.*, No. 1:17-CV-1075-FJSATB, 2020 WL 495129, at *5 (N.D.N.Y. Jan. 30, 2020) ("the Court interprets *Bristol-Myers Squibb* to extend to nationwide class actions and declines to exercise specific personal jurisdiction over [defendant] with regard to the Out-of-State Plaintiffs' claims"); *Carpenter v. PetSmart, Inc.*, No. 19-CV-1731-CAB-LL, 2020 WL 996947, at *6 (S.D. Cal. Mar. 2, 2020) (reasoning that "if and when the Supreme Court is presented with the question, it will also hold that a state cannot assert specific personal jurisdiction over a defendant for the claims of unnamed class members that would not be subject to specific personal jurisdiction if asserted as individual claims.").

Defendants respectfully submit that the decisions dismissing non-resident putative class members under FRCP 12(b)(2) are rightly decided.  This Court should adopt the reasoning of those decisions and hold that it lacks specific jurisdiction over non-New York resident putative class members against AGA and strike references to such putative class members from the proposed class definition.

## **CONCLUSION**

For all of the foregoing reasons, Defendants AGA Service Company d/b/a Allianz Global Assistance and Jefferson Insurance Company respectfully request that Plaintiff Michael Saag's Complaint be dismissed, in its entirety, with prejudice.

Dated: New York, New York
      October 23, 2020                  Respectfully submitted,

                                    */s/ Stephanie L. Denker*
                                    Stephanie L. Denker
                                    Saul Ewing Arnstein & Lehr LLP
                                    1270 Avenue of Americas, Suite 2005
                                    New York, New York 10020
                                    (212) 980-7214
                                    (212) 980-7209 (facsimile)
                                    stephanie.denker@saul.com

                                    Thomas S. Schaufelberger (*pro hac vice* pending*)*
                                    Matthew J. Antonelli (*pro hac vice* pending)
                                    Saul Ewing Arnstein & Lehr LLP
                                    1919 Pennsylvania Ave., NW, Suite 550
                                    Washington, D.C. 20006-3434
                                    (202) 295-6609
                                    (202) 295-6709 (facsimile)
                                    tschauf@saul.com
                                    matt.antonelli@saul.com

                                    James A. Morsch (*pro hac vice* pending)
                                    Saul Ewing Arnstein & Lehr LLP
                                    161 North Clark, Suite 4200
                                    Chicago, IL 60601
                                    (312) 876-7866
                                    jim.morsch@saul.com

                                    *Counsel for Defendants*
                                    *AGA Service Company d/b/a Allianz Global*
                                    *Assistance and Jefferson Insurance Company*

## CERTIFICATION OF COMPLIANCE

Pursuant to Local Civil Rule 11.1 and Section V.D. of the Individual Practices and Procedures of Chief Judge Colleen McMahon, I hereby certify that this memorandum of law complies with the formatting rules and the total pages in this memorandum of law, excluding the caption, certification of compliance, table of contents, and table of authorities, is 22 pages.

This the 23rd day of October, 2020.

*/s/ Stephanie L. Denker*
Stephanie L. Denker

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Memorandum in Support of Defendant's Motion to Dismiss and to Strike was filed with the clerk on this date and sent to all counsel via CM/ECF as follows:

Brian R. Morrison (BM-1986)
Ariana J. Tadler (AT-0452)
**TADLER LAW LLP**
One Penn Plaza, 36th Floor
New York, NY 10119
Telephone: (212) 946-9300
Fax: (929) 207-3746
bmorrison@tadlerlaw.com
atadler@tadlerlaw.com

Patrick C. Marshall
James M. Terrell
Courtney C. Gipson
**METHVIN, TERRELL, YANCEY,
STEPHENS, & MILLER, PC**
2201 Arlington Avenue S.
Birmingham, AL 35205
Telephone: (205) 939-0199
Facsimile: (205) 939-0399
pmarshall@mtattorneys.com
jterrell@mtattorneys.com
cgipson@mtattorneys.com

*Counsel for Plaintiff*

This the 23rd day of October, 2020.

                                        */s/ Stephanie L. Denker*
                                        Stephanie L. Denker